UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cannon Falls Area Schools, ISD 252,　　　　　　　　　　No. 24-cv-3383 (KMM/DLM)

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　**ORDER**

The Hanover American Insurance Company,

　　　　Defendant.

This matter is before the Court on the parties' cross-motions for summary judgment and Defendant's motion to exclude expert testimony. (Dkt. Nos. 23, 25.) For the reasons that follow, the Court grants summary judgment to Defendant, denies Plaintiff's summary-judgment motion, and finds Defendant's request to exclude expert testimony to be moot.

## BACKGROUND

On April 12, 2022, a hailstorm and high winds damaged the Cannon Falls Elementary School and Cannon Falls High School buildings. Both schools have metal roofs, and the parties agree that the hailstorm caused indentations to both roofs. There is no dispute that the hailstorm did not puncture the metal on either school's roof. Nor did the storm disengage the metal roofs' seams. Since the storm, the schools' roofs have not leaked.

Cannon Falls Area Schools, ISD 252 ("ISD 252") is an independent school district. It owns both the elementary school and the high school. When the storm occurred, The Hanover American Insurance Company insured the schools under a Commercial Line Policy ("the policy"), which provides coverage for "direct physical loss of or damage to" the schools "caused by or resulting from any Covered Cause of Loss." Hail is a covered cause of loss under the policy. However, the policy also places limitations on coverage for roof surfaces under the Cosmetic Damage Exclusion:

> The following applies with respect to loss or damage by wind and/or hail to a building or structure [to which the policy applies]:
>
> [Hanover] will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

On April 19, 2022, ISD 252 submitted a claim to Hanover for coverage. Hanover paid a portion of the claim for damage to HVAC equipment on ISD 252's covered properties. However, on September 8, 2022, Hanover denied the rest of ISD 252's claim for damage to the schools' metal roofs, asserting that it owed no coverage under the Cosmetic Damage Exclusion.

The parties were unable to resolve their disagreement over coverage for several years after the storm. On August 23, 2024, ISD 252 filed this lawsuit.[1] ISD 252 asserts a claim for a declaratory judgment providing that Hanover is fully liable for the damage to the schools' roofs under the policy and that no exclusion to coverage applies. It also asserts a claim for breach of contract based on Hanover's failure to pay the agreed-upon amounts of damages for the loss.[2]

The parties retained experts to assess the damage to the roofs. ISD 252's expert, Matt Phelps, P.E., opined that the indentations to the metal roof surfaces weaken the metal and makes it more susceptible to further damage, particularly in connection with movement of the material due to loading forces from wind and snow. Dr. Phelps did not observe any punctures in the metal roofs from the hail indentations, nor did he identify any disengaged seams. He agreed that the

---

[1] Hanover and ISD 252 agreed to toll the policy's two-year limitations period.

[2] The parties stipulated that the replacement cost value of the roof on the elementary school is $1,330,936.63; the actual cash value of the roof on the elementary school is $1,101,313.61; the replacement cost value of the roof on the high school is $1,407,051.70; and the actual cash value of the roof on the high school is $1,165,702.43.

2

protective coating on the metal panels was not functionally damaged. Dr. Phelps removed metal panels from a portion of the elementary school roof and performed testing on those panels. He did not take any roof samples from the high school roof. Based on Dr. Phelps' testing, he opined that the indentations weaken the metal roof coverings, making it more likely that future weather events could cause the roofing materials to fail, allowing the elements to break through the roofs' barriers and damage the schools.

Hanover retained Steven Fulmer, PhD as an expert witness. Dr. Fulmer conducted a visual inspection of the roofs, but he did not remove any roofing panels or conduct any laboratory testing. Dr. Fulmer's evaluation did not include a hail drop test or a hail cannon test. Dr. Fulmer agreed that the schools' roofs exhibited widespread sporadic indentations from the hailstorm. However, he did not see any disruption of the surface finishes on the roofs from the hail indentations. According to Dr. Fulmer, the shallow indentations in the metal roofs neither reduce the ability of the materials to shed water nor shorten the lifespan of the materials. Dr. Fulmer opined that the hail-related damage to the roofs does not affect their ability to handle loads from snow or wind.

## DISCUSSION

### I.   Summary Judgment Motions

In support of its motion for summary judgment, ISD 252 argues that it is undisputed that the hail impacts weakened the roofs of both schools, and as a result, they are more susceptible to a greater degree of damage from a future hail event. Therefore, ISD 252 asserts, the roofs do not function as a barrier to the elements *to the same extent* they did before the April 2022 storm, and Hanover cannot meet its burden to establish that the Cosmetic Damage Exclusion applies. To the contrary, Hanover argues that the undisputed evidence shows that the roofs on both schools continue to function as a barrier to the elements just as they did before the April 2022 storm.

Hanover contends that ISD 252 misreads the definition of "cosmetic damage" in the policy, and when that definition is properly construed, the facts of this case demonstrate that the exclusion applies, and Hanover is entitled to summary judgment.

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Cearley v. Bobst Grp. N. Am. Inc.*, 129 F.4th 1066, 1069 (8th Cir. 2025). The moving party must demonstrate that the material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Lankford v. City of Plumerville*, 42 F.4th 918, 921 (8th Cir. 2022). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Becker v. City of Hillsboro*, 125 F.4th 844, 851 (8th Cir. 2025). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255).

The task here is somewhat complicated by the fact that we have cross-motions for summary judgment in this case. When considering ISD 252's motion, the Court views the record in the light most favorable to Hanover, and when considering Hanover's motion, the court must view the record in the light most favorable to ISD 252. *See Durand v. Fairview Health Servs.*, 230 F. Supp. 3d 959, 965 (D. Minn. 2017).

### B. Construing and Applying the Exclusion

The parties agree that ISD 252's claims for declaratory judgment and breach of contract hinge upon the analysis of the policy—specifically the proper interpretation of the Cosmetic Damage Exclusion—and that Minnesota's substantive law should be applied in that analysis. Therefore, the Court's task is to "predict how the Supreme Court of Minnesota would rule if the issue came before it." *Jerry's Enters., Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 887 (8th Cir. 2017) (quotation omitted). Initially, the insured has the burden to show that coverage exists, and then the burden shifts to the insurer to demonstrate that a policy exclusion applies. *Id.* (citing *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 951 (8th Cir. 2012)).

When construing an insurance policy, courts apply "[g]eneral contract principles," and "interpret the policy to effect the intentions of the parties." *Id.* (citing *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002)). "When a policy's language is clear and unambiguous, we interpret the policy according to the plain, ordinary sense" to reflect the parties' intent. *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008) (cleaned up). A court's interpretation should not consider a policy term in a vacuum; rather, the policy "must be construed as a whole," and the court must consider "what a reasonable person in the position of the insured would have understood the words to mean." *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (quotations omitted). A policy term is ambiguous when "it is susceptible to two or

5

more reasonable interpretations," and "[a]ny ambiguity is resolved in favor of the insured." *Id.* (cleaned up).

The contract-interpretation dispute in this case boils down to a disagreement about what it means for a roof to continue to function as a barrier to the elements *to the same extent* that it did before hail or wind damage occurred. ISD 252 takes the position that it is more likely now than before the April 2022 storm that the roofs could puncture or otherwise allow the elements to get past the metal surfacing. According to ISD 252, in another hailstorm, hail could strike the metal roofs in the same indentations that were caused be the April 2022 storm, and they would be more likely to fail as a result. Because the roof is weaker now and more susceptible to failure in the event of a future storm, ISD 252 contends that the roofs do not continue to function as a barrier to the elements to the same extent that they did previously. Hanover argues that ISD 252's reading of the exclusion is contrary to its plain language. According to Hanover, the "to the same extent" language means that if a roof does not leak before hail dented the roof, and it does not leak after the hail dented the roof, then the roof continues to function as a barrier to the elements, making that damage "cosmetic" and excluding coverage under the policy. Hanover argues that the possibility that existing indentations in the roof surfacing make it more likely the elements could breach the metal panels at some unknown future date during the service life of the roof does not make the Cosmetic Damage Exclusion inapplicable. Weighing these arguments, the Court finds Hanover has the better reading of the policy language.

The policy plainly states, and the parties do not dispute, that hail damage counts as a covered loss for which Hanover must pay. But in the Cosmetic Damage Exclusion, the policy also plainly excludes coverage for "cosmetic damage" to the roofing surfaces caused by hail or wind. As defined, cosmetic damage occurs when wind or hail "caused marring, pitting or other

6

superficial damage that altered the appearance of the roof surfacing." The definition further states that damage is superficial or cosmetic (and therefore excluded from coverage) when it "does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred." This language is unambiguous and plainly refers to the type of surface damage at issue in this case. The definition's terms differentiate hail or wind damage that affects the appearance of roof surfacing materials from damage that affects the performance of those materials.[3] Indeed, "marring" and "pitting" of roofing panels are surface-level forms of damage that are not meaningfully distinguishable from the indentations at issue in this case, and all fall directly within the exclusion. The widespread indentations on the schools' metal roofs affect their appearances, but not their functioning.

The definition of cosmetic damage also focuses on the roof's functional capabilities in the present, rather than in the future. In differentiating between cosmetic damage and covered damage, the exclusion asks whether the marring, pitting, or other superficial damage prevents the roof from continuing to function as a barrier to the elements to the same extent it did before the damage occurred. It does not ask, as ISD 252 contends, whether the hail or wind damage weakened the roofing materials such that they may be less capable of acting as a barrier to the elements at some uncertain point in the future. The inclusion of the phrase "to the same extent as it did before the . . . damage occurred" does not change this focus on the roof's present ability to act as a barrier to the elements. And in this case, there is no dispute that in the three years since the April 2022

---

[3] This distinction fits with the ordinary meaning of the term "superficial," a term used as a synonym for cosmetic in the policy's definition of cosmetic damage. *See The Am. Heritage Dictionary of the English Language* 1748 (5th ed. 2011) (defining "superficial" as "[o]f, affecting, or being on or near the surface"; "[a]pparent rather than actual or substantial"; and "minor or insignificant").

hailstorm, the metal roofs on the schools have continued to function as a barrier to the elements: there is no evidence of any leaks or any other incursion of the elements.

Other courts have found similar language focuses on the roof's present ability to block the incursion of the elements. *See J&S Welding, Inc. v. Liberty Mut. Ins. Co.*, 693 F. Supp. 3d 823, 833–34 (W.D. Tenn. 2023) (finding a nearly identical cosmetic damage exclusion unambiguous and granting summary judgment to the insurer where the plaintiff offered no evidence that the hail damage prevented the roof from continuing to function as a barrier to the elements), *aff'd*, No. 23-5942, 2024 WL 3495073 (6th Cir. July 22, 2024); *Calfox Inc. v. Certain Underwriters of Lloyd's*, No. 20-cv-2433-RM-KMT, 2024 WL 1051948, at *6–7 (D. Colo. Mar. 11, 2024) (interpreting an identical exclusion to mean that "[i]f the damage is cosmetic but will ultimately result in a shorter lifespan for the roof, as long as the elements cannot penetrate, the damage is excluded," but denying summary judgment because there was a fact dispute about whether the roof continues to function as a barrier to the elements); *Amphay v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:21-cv-219-Z-BR, 2023 WL 2491285, at *1–2 (N.D. Tex. Mar. 13, 2023); *see Jacquess v. Allstate Vehicle & Prop. Ins. Co.*, No. 5:22-cv-015-C, 2023 WL 10672192 (N.D. Tex. June 27, 2023) (citing *Amphay*). Although the parties do not point to any decision from the Minnesota appellate courts interpreting insurance policy language similar to the Cosmetic Damage Exclusion at issue in this case, this Court predicts that the Minnesota Supreme Court would interpret the exclusion in this case consistent with this Court's analysis and these other decisions.

Nevertheless, ISD 252 suggests that the Court should read the exclusion to apply more narrowly, arguing that the hail impacts from the April 2022 storm "immediately weakened the Roofs' metal . . . mean[ing] that the Roofs cannot resist hail impacts, snow load, and wind forces to the same extent as it [sic] did prior to the damage." (Dkt. No. 36 at 2.) But ISD 252 cites no

8

authority to support such a reading, and its argument overlooks the plain and ordinary meaning of the language in the Cosmetic Damage Exclusion. As one court reviewing a similarly worded exclusion explained:

> Dents from hail, without more, are precisely the sort of thing that alters only the physical appearance of metal materials, such that they are not covered by the Policy unless one of the exceptions applies.
>
> . . .
>
> The policy's plain language unequivocally speaks in the present tense—excepting hail damage from the cosmetic exclusion only if it does result in the failure of the metal materials to perform their intended function of keeping out the elements. Conjecture regarding what might happen at some unknown point in the future is not evidence that the metal materials are presently unable to perform their intended function of keeping out the elements.

*Iyengar v. Liberty Ins. Corp.*, No. SA-21-CV-FB (HJB), 2023 WL 8505692, at *5 (W.D. Tex. Oct. 24, 2023) (cleaned up), *R&R adopted by*, 2024 WL 1161321 (W.D. Tex. Mar. 15, 2024).

ISD 252 also argues that the Court should construe the language in the Cosmetic Damage Exclusion against Hanover. (Dkt. No. 36 at 6–7 (citing *LaPalme v. Auto-Owners Ins. co.*, No. A24-1511, 2025 WL 1638250, at *5 (Minn. Ct. App. June 9, 2025)).) However, under Minnesota law, courts only construe language in an insurance contract against the drafter and in favor of the insured when that language is ambiguous and the parties' intent is unclear. *See Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 694 (Minn. 2018) ("[W]e have applied the rule of *contra proferentem* only *after* an attempt is made to determine the parties' intent behind an ambiguous term, using extrinsic evidence if available."). But there is no ambiguity here and the intent of the parties is clear from the plain language of the exclusion.

In sum, the Cosmetic Damage Exclusion applies when hail or wind causes only superficial damage to the appearance of the roof, and the roof surfacing here continues to function as a barrier

to the elements to the same degree that it did before the storm. The exclusion does not mean, as ISD 252 argues, that hail or wind damage falls outside the exclusion whenever the roofing materials are weakened or the long-term prospects of the roof's ability to keep the elements out is diminished. Such a reading would rewrite the policy. And when the evidence is viewed in the light most favorable to ISD 252, there is no genuine dispute of material fact. A reasonable jury could not find that the April 2022 hail damage prevents the schools' roofs from continuing to function as barriers to entrance of the elements to the same extent they did before the cosmetic damage occurred.[4] As a result, the Court concludes that ISD 252 cannot prevail on its declaratory-judgment or breach-of-contract claim, and Hanover is entitled to summary judgment.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 23) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Dkt. No. 25) is **GRANTED**.

3. Defendant's Motion to Exclude Expert Witness Testimony (Dkt. No. 25) is **DENIED** as moot.

4. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**Let Judgment be entered accordingly.**

Date: October 21, 2025                             *s/Katherine Menendez*
                                                   Katherine Menendez
                                                   United States District Judge

---

[4] The Court reaches this conclusion even considering the evidence from ISD 252's expert, Dr. Phelps. Because the Court finds that Hanover is entitled to summary judgment even when Dr. Phelps' testimony is taken into account, it finds that Hanover's motion to exclude his expert opinions is moot.